UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                    :  11 Civ. 6188 (DLC)
                                    :  11 Civ. 6189 (DLC)
FEDERAL HOUSING FINANCE AGENCY,  :  11 Civ. 6190 (DLC)
                                    :  11 Civ. 6192 (DLC)
               Plaintiff,  :  11 Civ. 6193 (DLC)
                                    :  11 Civ. 6195 (DLC)
        -v-                     :  11 Civ. 6198 (DLC)
                                    :  11 Civ. 6200 (DLC)
                                    :  11 Civ. 6201 (DLC)
JPMORGAN CHASE & CO., et al.,    :  11 Civ. 6202 (DLC)
                                    :  11 Civ. 6203 (DLC)
              Defendants;  :  11 Civ. 6739 (DLC)
                                    :  11 Civ. 7010 (DLC)
And other FHFA cases.           :
                                    :    OPINION & ORDER
----------------------------------------X


APPEARANCES:

For the plaintiff:

Philippe Z. Selendy
Richard A. Schirtzer
Adam M. Abensohn
Andrew R. Dunlap
David B. Schwartz
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

Marc E. Kasowitz
Christopher P. Johnson
Michael A. Hanin
Kanchana Wangkeo Leung
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

For Defendants Deutsche Bank AG, Taunus Corporation, Deutsche
Bank Securities Inc., DB Structured Products, Inc., Ace
Securities Corp., Mortgage IT Securities Corp.:

Andrew T. Frankel

Thomas C. Rice
David J. Woll
Alan C. Turner
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954

For Defendant RBS Securities Inc.:

Thomas C. Rice
David J. Woll
Andrew T. Frankel
Alan Turner
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

For Defendants Nomura Securities International, Inc., Nomura
Holding America Inc., Nomura Asset Acceptance Corporation,
Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc.,
David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and
N. Dante LaRocca:

Bruce Clark
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Amanda F. Davidoff
Sullivan & Cromwell LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006

For Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A.,
J.P. Morgan Mortgage Acquisition Corporation, J.P. Morgan
Securities LLC, J.P. Morgan Acceptance Corporation I, Bear
Stearns & Co., Inc., EMC Mortgage LLC, Structured Asset Mortgage
Investments II Inc., Bear Stearns Asset Backed Securities I LLC,
WaMu Asset Acceptance Corporation, WaMu Capital Corporation,
Washington Mutual Mortgage Securities Corporation, Long Beach
Securities Corporation and certain of the Individual Defendants:

Penny Shane
Sharon L. Nelles
Jonathan M. Sedlak
Yavar Bathaee

Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

For Defendants Goldman, Sachs & Co., GS Mortgage Securities
Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group,
Inc., Goldman Sachs Real Estate Funding Corp., Peter C. Aberg,
Howard S. Altarescu, Robert J. Christie, Kevin Gasvoda, Michelle
Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks,
and Mark Weiss:

Richard H. Klapper
Theodore Edelman
Michael T. Tomaino, Jr.
Tracy Richelle High
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

For Defendants Credit Suisse Securities (USA) LLC, Credit Suisse
Holdings (USA), Inc., Credit Suisse (USA), Inc., DLJ Mortgage
Capital, Inc., Credit Suisse First Boston Mortgage Securities
Corporation, Asset Backed Securities Corporation, Credit Suisse
First Boston Mortgage Acceptance Corporation, Andrew A. Kimura,
Jeffrey A. Altabef, Evelyn Echevarria, Michael A. Marriott, Zev
Kindler, Thomas E. Siegler, Thomas Zingalli, Carlos Onis, Steven
L. Kantor, Joseph M. Donovan, Juliana Johnson, and Greg Richter:

Richard W. Clary
Richard J. Stark
Michael T. Reynolds
Lauren A. Moskowitz
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

For Defendants HSBC North America Holdings Inc., HSBC USA Inc.,
HSBC Markets (USA) Inc., HSBC Bank USA, NA., HSI Asset
Securitization Corporation:

John M. Conlon
Mark S. Hanchet
Michael O. Ware
Mayer Brown LLP
1675 Broadway

New York, NY 10019

For Defendants First Horizon National Corporation, First
Tennessee Bank National Association, FTN Financial Securities
Corporation, First Horizon Asset Securities, Inc., Gerald L.
Baker, Peter F. Makowiecki, Charles G. Burkett, and Thomas J.
Wageman:

Bruce Clark
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Amanda F. Davidoff
Sullivan & Cromwell LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006

For Defendant Samuel L. Molinaro, Jr.

Pamela Rogers Chepiga
Josephine A. Cheatham
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020

For Defendants Morgan Stanley, Morgan Stanley & Co. Incorporated
(n/k/a Morgan Stanley & Co. LLC), Morgan Stanley Mortgage
Capital Holdings LLC (successor-in-interest to Morgan Stanley
Mortgage Capital Inc.), Morgan Stanley ABS Capital I Inc.,
Morgan Stanley Capital I Inc., Saxon Capital, Inc., Saxon
Funding Management LLC, Saxon Asset Securities Company, Gail P.
McDonnell, Howard Hubler, David R. Warren, and Steven S. Stern:

James P. Rouhandeh
Brian S. Weinstein
Daniel J. Schwartz
Nicholas N. George
Jane M. Morril
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017

For Defendant Jeffrey Mayer:

Richard A. Edlin

4

Ronald D. Lefton
Candace Camarata
Greenberg Traurig LLP
200 Park Avenue,
New York, NY 10166

For Defendants Ally Financial Inc. and GMAC
Mortgage Group, Inc.

Reginald R. Goeke
Catherine M. Bernard
Mayer Brown LLP
1999 K St., N.W.
Washington, D.C. 20006

Michael O. Ware
Mayer Brown LLP
1675 Broadway
New York, NY 10019

For Defendant Matthew Perkins:

Sandra D. Hauser
SNR Denton US LLP
1221 Avenue of the Americas
New York, New York 10020

For Defendants Barclays Capital Inc., Barclays Bank PLC,
Securitized Asset Backed Receivables LLC, Paul Menefee, John
Carroll, and Michael Wade:

David H. Braff
Brian T. Frawley
Jeffrey T. Scott
Joshua Fritsch
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

For Defendants SG Americas, Inc., SG Americas Securities
Holdings, LLC, SG Americas Securities, LLC, SG Mortgage Finance
Corp., and SG Mortgage Securities, LLC, Arnaud Denis, Abner
Figueroa, Tony Tusi, and Orlando Figueroa:

Jay B. Kasner
Scott Musoff

5

George Zimmerman
Robert A. Fumerton
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036

For Defendant Ally Securities, LLC:

Matthew Solum
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Robert J. Kopecky
Devon M. Largio
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

Jeffrey S. Powell
Patrick M. Bryan
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005

For Defendants Tom Marano and Michael Nierenberg:

Joel C. Haims
LaShann M. DeArcy
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

For Defendant Jeffrey L. Verschleiser:

Dani R. James
Jade A. Burns
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036

For Defendants Bank of America Corporation; Bank of America,
N.A.; Asset Backed Funding Corp.; Banc of America Funding Corp.;
Merrill  Lynch & Co., Inc., Merrill Lynch Mortgage Lending,
Inc., Merrill Lynch Mortgage Capital Inc., First Franklin
Financial Corp., Merrill  Lynch Mortgage Investors, Inc.,

Merrill Lynch Government Securities, Inc., Merrill Lynch,
Pierce, Fenner & Smith Inc.:

David Blatt
John McNichols
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

For Defendants George C. Carp, Robert Caruso, George E. Ellison,
Adam D. Glassner, Daniel B. Goodwin, Juliana Johnson, Michael J.
Kula, William L. Maxwell, Mark I. Ryan, and Antoine Schetritt;
Matthew Whalen; Brian Sullivan; Michael McGovern; Donald
Puglisi; Paul Park, and Donald Han:

Daniel C. Zinman
Matthew M. Riccardi
Richards Kibbe & Orbe LLP
One World Financial Center
New York, NY 10281

DENISE COTE, District Judge:

On August 30, 2013, the defendants filed this motion to
compel FHFA to produce documents it is currently withholding
from discovery on the basis of the bank examination and
deliberative process privileges.  For the following reasons, the
bank examination privilege applies to FHFA.  The defendants'
request for a blanket order that all withheld documents be
produced is consequently denied.  With respect to any specific
documents that the defendants believe do not meet the
requirements of either the bank examination privilege or the
deliberative process privilege, the parties must follow the
procedure set out at a conference of February 21, 2013, whereby

7

examples of such documents may be submitted for <u>in camera</u>
review.  The parties shall also follow this procedure with
respect to any documents over which the defendants claim good
cause to override either privilege.


    BACKGROUND

    Plaintiff Federal Housing Finance Agency ("FHFA"), as
conservator of the Federal National Mortgage Association
("Fannie Mae") and the Federal Home Loan Mortgage Corporation
("Freddie Mac") (collectively, the "GSEs"), filed seventeen
actions in this district against various financial institutions
("defendants") involved in the packaging, marketing, and sale of
residential mortgage-backed securities purchased by the GSEs
between 2005 and 2007.  Discovery between the parties is
ongoing.  In the course of this discovery, FHFA is withholding
or redacting approximately 22,010 documents on the basis of
either the bank examination privilege or the deliberative
process privilege.[1]  FHFA is withholding 11,843 documents on the
basis of the bank examination privilege alone, 2,311 on the
basis of the deliberative process privilege alone, and 4,260 on
the basis of both privileges.  The defendants have filed a

---

[1] Out of this number, 3,596 documents are also withheld on a
separate basis not challenged by defendants, and so the number
of documents effectively at issue here is 18,414.

8

motion to compel production of these documents.  The motion was
fully submitted on September 25, 2013.


    DISCUSSION

The defendants' motion to compel is governed by Federal
Rule of Civil Procedure 26(b)(1).  That rule provides that
"[p]arties may obtain discovery regarding any nonprivileged
matter that is relevant to any party's claim or defense," and
that with respect to privileged materials, "[f]or good cause,
the court may order discovery of any matter relevant to the
subject matter involved in the action."  Fed. R. Civ. P.
26(b)(1).


I. <u>The Bank Examination Privilege</u>

The parties do not cite, and the Court has not found, any
authority -- controlling or otherwise -- speaking directly to
the question of whether FHFA may assert the bank examination
privilege.  Unsurprisingly, both sides offer grave admonitions
against the Court being the very first to decide this question
against them.

The defendants argue that the bank examination privilege
cannot apply to FHFA because the GSEs are not <u>banks</u> and FHFA is
not a <u>bank</u> regulator.  They also argue that FHFA's relationship

with the GSEs it regulates is significantly different from the relationship between bank regulators and banks in a way that "militate[s] strongly against" applying the bank examination privilege here.  And they contend that FHFA's own actions in selectively releasing documents purportedly subject to the privilege undermines its argument that the privilege is necessary to protect the free-flow of information between FHFA and the GSEs.

FHFA emphasizes that its authority over the GSEs includes the exact powers of bank examiners.  It asserts that the defendants' argument that "GSEs are not banks" is semantic and not substantive.  And it contends that the GSEs it regulates engage in banking related activities such that the rationale animating the banking examination privilege applies equally to FHFA's communications with the GSEs it regulates.  For the following reasons, FHFA is correct.

Recognition of a common law privilege in federal court is governed by Federal Rule of Evidence 501, which provides that

> The common law -- as interpreted by United States courts in the light of reason and experience -- governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court.

Fed. R. Evid. 501; The New York Times Co. v. Gonzales, 459 F.3d 160, 169 (2d Cir. 2006); see also, e.g., In re Franklin Nat.

Bank Sec. Litig., 478 F. Supp. 577, 580 (E.D.N.Y. 1979)(hereinafter "Franklin")(relying on Rule 501 as authority for determination of civil discovery documentary privilege question). "The authors of the Rule borrowed this phrase ["in light of reason and experience"] from [the Supreme Court's] opinion in Wolfle v. United States, 291 U.S. 7, 12 (1934), which in turn referred to the oft-repeated observation that 'the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions.'" Jaffee v. Redmond, 518 U.S. 1, 8 (1996). As the Second Circuit has noted, courts in this Circuit have "[u]s[ed] the method of analysis set out in [Jaffee]" as the framework for determining whether a common law privilege should be extended to a new factual situation under Federal Rule of Evidence 501. The New York Times Co., 459 F.3d at 169.[2] Thus, the task of a court in this Circuit in determining whether a common law privilege applies to a new situation is to look to the "principles" animating the recognition of the privilege and to determine whether those principles are sufficiently implicated to justify recognizing the privilege. "Privileges should be narrowly construed and

---

[2]  In New York Times, the Second Circuit determined that any privilege would be overcome for good cause and consequently declined to undertake the Jaffee analysis itself. The New York Times Co., 459 F.3d at 169.

expansions cautiously extended." <u>United States v. Weissman</u>, 195
F.3d 96, 100 (2d Cir. 1999).

Under this standard, to determine whether the bank
examination privilege applies to FHFA's communications with the
GSEs it regulates it is necessary to understand the reason for
the bank examination privilege.  The bank examination privilege
is a common-law privilege.  Courts have justified the privilege
because of the distinctively continuous and informal process of
bank regulation, which especially requires candor from regulated
entities.  <u>See, e.g.</u>, <u>Wultz v. Bank of China Ltd.</u>, 11 CIV. 1266
(SAS), 2013 WL 1453258, at *3 (S.D.N.Y. Apr. 9, 2013). ("[the
bank examination privilege] arises out of the practical need for
openness and honesty between bank examiners and the banks they
regulate." (citation omitted)).  The D.C. Circuit Court of
Appeals has described the bank examination privilege at length
in process terms, finding that it is:

> [F]irmly rooted in practical necessity.  Bank safety and
> soundness supervision is an iterative process of comment by
> the regulators and response by the bank.  The success of the
> supervision therefore depends vitally upon the quality of
> communication between the regulated banking firm and the bank
> regulatory agency.  This relationship is both extensive and
> informal . . . in the sense that it calls for adjustment, not
> adjudication. . . .  These conditions simply could not be met
> as well if communications between the bank and its regulators
> were not privileged.

<u>In re Subpoena Served Upon Comptroller of Currency</u>, 967 F.2d
630, 633 (D.C. Cir. 1992).

In addition to this rationale rooted in effective practical regulation, a less cited but undoubtedly important justification for the privilege is the financial system's sensitivity to public questioning of bank soundness.  See, e.g., Delozier v. First Nat. Bank of Gatlinburg, 113 F.R.D. 522, 526 (E.D. Tenn. 1986) (a "second interest in nondisclosure [of bank examination communications] which must be considered is the effect of such disclosure on the public's confidence in the bank.").  Open, adversarial, litigation between banks and their regulators is destabilizing and regulators seek to avoid it.  See, e.g., In re Subpoena, 967 F.2d at 634 (explaining that in 1991, the Office of the Comptroller of the Currency issued only 83 public cease and desist orders in the process of supervising approximately 3,800 national banks).

The question here is whether the distinctive necessity for candid and informal regulation of the banking sector -- stemming from both practical necessity of day-to-day bank regulation, as well as from necessity to maintain public confidence in the financial system -- which undergirds the bank examination privilege, applies also to FHFA's regulation of the GSEs.  It does.  As is explained in more detail below, FHFA regulation of the GSEs implicates the same two concerns present in the banking regulatory sphere which justify the bank examination privilege.

13

Moreover, Congress's actions weigh in favor of recognizing the privilege here.  Congress has granted FHFA the exact same powers as bank regulators.  It has also codified the bank examination privilege in the Freedom of Information Act ("FOIA") and expressly provided that the privilege applies to FHFA in the FOIA context.  These actions suggest that Congress intended for the GSE regulatory regime to run parallel to the bank regulatory regime.

A. FHFA's regulation of the GSEs implicates the same concerns present in bank regulators' regulation of banks.

FHFA's regulation of the GSEs implicates the same concerns present in the realm of banking regulation that justify the bank examination privilege.  FHFA is charged with ensuring the GSEs' "maintenance of adequate capital and internal controls."  12 U.S.C. § 4513(a)(1)(B)(i).  FHFA also has the duty to "foster liquid, efficient, competitive, and resilient national housing finance markets."  12 U.S.C. § 4513(a)(1)(B)(ii); see also 12 C.F.R. § 1200.1  ("FHFA is charged with ensuring that the regulated entities: [o]perate in a safe and sound manner, including maintaining adequate capital and internal controls; foster liquid, efficient, competitive, and resilient national housing finance markets.").  These mandates overlap considerably with the mandates of bank regulators.  See, e.g., 12 U.S.C. § 1820 et seq. (vesting the Federal Deposit Insurance Corporation

14

with the mandate to ensure adequate capitalization and
management of banks).  They implicate both the effectiveness-of-
regulation rationale, as well as the public confidence rationale
for recognition of the privilege.

The effectiveness-of-regulation rationale underlying the
bank examination privilege is present in the FHFA context.  Both
FHFA and the bank regulators are charged with ensuring adequate
capitalization and liquid and efficient markets.  The similarity
in the missions of FHFA and the banking regulators suggests that
the need for an iterative and collaborative regulatory process
that courts recognize in the banking regulatory sector extends
also to FHFA's regulation of the GSEs.  FHFA officials'
declarations of the day to day process of the regulation of the
GSEs confirm this.  As one official explains, FHFA "utilize[s]
various techniques to preserve the confidentiality for non-
public examination activities" in the course of its "on-going
supervision and examination" of the GSEs.  There is no reason to
believe that the need for the regulated entities to "be open and
forthcoming in response to the inquiries of . . . examiners"
and for "examiners . . . in turn [to] be frank in expressing
their concerns" is any less applicable in the context of GSEs
than in the context of banks that take deposits.  In re
Subpoena, 967 F.2d at 634.

15

The public confidence justification underlying the bank examination privilege is also present with respect to FHFA's regulation of the GSEs.  It is hard to overstate the importance of FHFA's regulation of the GSEs to the U.S. economy and financial system.  Given that "in 2008 the GSEs financed about 40% of all American mortgages and owed debt in excess of $5.3 trillion, their failure would [be] catastrophic for the American economy in a way that, with few exceptions, the failure of a single bank or credit union would not be."  Fed. Hous. Fin. Agency v. UBS Americas, Inc., 858 F. Supp. 2d 306, 340 (S.D.N.Y. 2012).  Consequently, just as is the case with bank regulation, considerations of economic stability counsel in favor of a regulatory regime in which FHFA can informally and confidentially discuss issues of capitalization and liquidity with the GSEs in a privileged manner rather than through formal comment and adjudication.

Another reason for recognizing the privilege here is that in the post Gramm-Leach-Bliley Act ("Gramm-Leach") era, Pub. L. No. 106-102 § 101, 113 Stat. 1338 (1999), bank activities extend considerably beyond holding deposits and include the buying and selling of, inter alia, mortgage securities.  These activities overlap considerably with GSE core mortgage activities and bring FHFA's regulatory mandate even closer into accord with the

16

mandate of bank regulators.  Given their increasingly similar
regulatory functions, it is hard to find a principle upon which
to deny the bank examination privilege to FHFA while granting it
to regulators of banks that take deposits.  In fact, the
defendants themselves invoke the bank examination privilege
numerous times in this litigation over communications with bank
regulators in connection with the same class of mortgage related
activities over which FHFA is attempting to assert the privilege
here.  The defendants contend that they, but not FHFA, should be
able to invoke the privilege with respect to identical
communications about mortgage securitization activities because
"those nonbanking activities are conducted by banks."  But,
recognition of a privilege turns on "principles" and not
formalities.  <u>Jaffee</u>, 518 U.S. at 8.

   B. <u>Congress's similar treatment of FHFA and bank regulators</u>

     Congress has taken two actions which suggest its intent
that the GSE regulatory regime run parallel to the banking
regulatory regime, and which weigh in favor of recognizing the
bank examination privilege here.  First, Congress gave FHFA the
exact same powers that bank examiners have.  <u>See</u> 12 U.S.C. §
4517(e).  Second, Congress codified the common law bank
examination privilege in the Freedom of Information Act, and

expressly provided that the privilege would apply to FHFA in the FOIA context.  See 5 U.S.C. § 552(b)(8); 12 U.S.C. § 4525.

In the codified statute creating FHFA's predecessor agency, OFHEO, (which is codified under Title 12, entitled "Banks and Banking"), Congress provided that OFHEO would "have the same authority and each examiner shall be subject to the same disclosures, prohibitions, obligations, and penalties as are applicable to examiners employed by the Federal Reserve banks." 12 U.S.C. § 4517(e).[3]  Among these obligations is that FHFA "determine the condition of [each GSE] for the purpose of ensuring its financial safety and soundness."  12 U.S.C. § 4517(a).  Congress having granted OFHEO and FHFA the same statutory "authority" and "obligations" as the Federal Reserve banks, it accords with "reason and experience" for courts to permit FHFA the same common law privilege tool available to the banks to accomplish its mandate.  Jaffee, 518 U.S. at 8.

Congress also spoke in codifying the bank examination privilege in exemption eight of FOIA and expressly designating FHFA and OFHEO as agencies able to invoke the privilege.  See 5 U.S.C. § 552(b)(8); 12 U.S.C. § 4525.  Exemption eight of FOIA exempts from disclosure to the public documents produced by

---

[3] OFHEO's powers were subsequently assigned substantially unchanged to FHFA upon FHFA's creation.  See generally UBS Americas Inc., 858 F. Supp at 322.

"agenc[ies] responsible for the regulation or supervision of financial institutions."  Id.  And 12 U.S.C. § 4525 explicitly provides that "for purposes of [FOIA] [FHFA] . . . shall be considered [an] agenc[y] responsible for the regulation or supervision of financial institutions."  Congress's explicit extension of the FOIA codified banking examination privilege to FHFA weighs heavily here.  Although a FOIA exemption does not, on its own, create a civil discovery privilege, see Chamber of Commerce of U.S. v. Legal Aid Sooc'y of Alameda Cnty., 423 U.S. 1309, 1310 (1975), Congress's express inclusion of FHFA within FOIA's exemption eight demonstrates that it viewed the considerations animating the extension of that privilege to bank regulators as applying also to FHFA in the FOIA context. Notably, the defendants have proffered no justification to distinguish between the rationales for granting FHFA the bank examination privilege in the FOIA context versus the civil discovery context.

C. The defendants' argument that GSEs are not "banks"

The defendants make much of the fact that the privilege at issue is called the "bank examination privilege" and that the GSEs are not banks.  They contend that "the bank examination privilege arises from the nature of the regulated entities, not the nature of the examination authority."  The defendants cite

19

no authority for the proposition that the privilege turns on the nature of the regulated entity.  The resolution of this motion cannot turn on a semantic argument alone.  Federal Rule of Civil Procedure 501 requires a court to consider the question of privileges not mechanically but "in the light of reason and experience," with the recognition that "the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions.'"  <u>Jaffee</u>, 518 U.S. at 8.  To decide this motion on the sole ground that a judge at some point in the past named this privilege the "bank" examination privilege, without looking to the principles underlying the privilege and their application to the facts at hand, would run counter to the standard enunciated in Rule 501 and in the caselaw.

   D. <u>The defendants' argument as to the nature of FHFA's</u>
      <u>regulation of the GSEs</u>

   The defendants also contend that the core justification of the bank examination privilege -- the concern that disclosure of communications would chill communication between the regulators and regulated entities -- is inapposite with respect to FHFA and the GSEs because FHFA already makes public some reports pertaining to its supervision of the GSEs.  This argument is unavailing.  High level reports from FHFA officials regarding their supervision of the GSEs simply do not pose the same

chilling effect on communication between FHFA and the GSEs as
would be created by disclosure of individual communications by
FHFA regulators or by employees of the GSEs themselves.  Under
12 U.S.C. § 4521(a), FHFA is required to make a "[g]eneral
report" to Congress, which includes "a description of the
actions taken [by FHFA]," and "the results and conclusions of
the annual examinations of the regulated entities."  The
requirement that FHFA disclose the actions it has taken and the
general results and conclusions of its supervision does nothing
to undercut the notion that disclosure of individual
communications would be chilling.  Nor is the defendants'
invocation of certain other public FHFA "opinions, findings, and
communications" persuasive.  Regulators of banks that take
deposits, whose communications are unquestionably privileged,
also make public opinions, findings, and communications.

The defendants also make the argument that because "the
GSEs likely will not even exist in the future, at least in the
form they existed during the relevant time period," the chilling
effect of the denying the privilege is undercut.  This argument
is without merit.  The decision as to the future of the GSEs has
not yet been made by Congress, and a motion to compel cannot be
granted on the basis of a future hypothetical.

E.  The defendants' argument as to FHFA's purportedly selective
    invocation of the business examination privilege

     The defendants also contend that "FHFA's selective use of
the privilege to produce some supervisory documents and withhold
others confirms that it has no general concern that production
will chill interactions between FHFA and the GSEs."  The
argument in its general form fails.  Not all communications
between FHFA and the GSEs are privileged.  See, e.g., Wultz,
2013 WL 1453258, at *4 ("Purely factual material falls outside
the privilege, whereas opinions and deliberative processes do
not.").  Disclosure of non-privileged communications between
FHFA and the GSEs is entirely appropriate.

     The defendants also make the more specific argument that
the disclosure (subject to a protective order) of 33,000
documents which FHFA had determined to be potentially privileged
in a prior case, SEC v. Syron, 11 CIV. 9201 (RJS) 2013 WL
1285572 (S.D.N.Y. 2013), undermines the notion that disclosure
here would have a chilling effect.[4]  In Syron, FHFA permitted the
production by Freddie Mac to the Securities and Exchange
Commission ("SEC") of approximately 33,000 documents that it
contended were potentially subject to the bank examination

---

[4] FHFA is withholding here ten of the 33,000 documents disclosed
the Syron case here.  The defendants note that they "do not
argue that the Syron production constituted a waiver."

22

privilege based on the result of a keyword search.  The SEC then produced those documents to the defendant in the case, Richard Syron, under a protective order which provided that the SEC's disclosure did not constitute any admission on FHFA's part that the documents were not privileged.  The court in Syron entered the protective order based on concerns about the "chilling effect" of disclosure on the bank examination process.  The defendants argue here that the production of the documents by the SEC in Syron shows that FHFA's "chilling" argument is overstated and that the bank examination privilege consequently should not apply to FHFA.  This argument is unavailing.  First, conveying certain documents that a privilege may protect does not waive an entity's right to ever claim the privilege.  The defendants' contention that FHFA's voluntary release of potentially privileged documents to the SEC, and the SEC's production of those documents to the defendant in Syron somehow obviates the need for the bank examination privilege to apply to FHFA at all fails.  Second, to the extent that Syron cuts in any way it cuts against the defendants' position.  The court in that case specifically recognized the potentially negative impact of the disclosure of the documents on FHFA's ability to regulate the GSEs.

II.  <u>Deliberative Process Privilege</u>

The defendants also seek to compel FHFA to produce the
documents it is withholding under the "deliberative process"
privilege.

> The deliberative process privilege rests on the obvious
> realization that officials will not communicate candidly
> among themselves if each remark is a potential item of
> discovery and front page news, and its object is to enhance
> the quality of agency decisions, by protecting open and
> frank discussion among those who make them within the
> Government.

<u>Dep't of Interior v. Klamath Water Users Protective Ass'n</u>, 532
U.S. 1, 8-9 (2001) (citation omitted).  "The privilege protects
recommendations, draft documents, proposals, suggestions, and
other subjective documents which reflect the personal opinions
of the writer rather than the policy of the agency."  <u>Brennan</u>
<u>Center for Justice at New York University School of Law v. U.S.</u>
<u>Dept. of Justice</u>, 697 F.3d 184, 194 (2d Cir. 2012) (citation
omitted).  "The pure deliberative processes of government have
traditionally been protected against disclosure."  <u>Ernest & Mary</u>
<u>Hayward Weir Found. v. United States</u>, 508 F.2d 894, 895 n.2 (2d
Cir. 1974).  "An inter- or intra-agency document may be withheld
pursuant to the deliberative process privilege if it is: (1)
predecisional, i.e., prepared in order to assist an agency
decisionmaker in arriving at his decision, and (2) deliberative,
i.e., actually related to the process by which policies are

formulated." National Council of La Raza v. Department of
Justice, 411 F.3d 350, 356 (2d Cir. 2005) (citation ommitted).
No party disputes that, as a government agency, the deliberative
process privilege applies to FHFA.  See, e.g., McKinley v. Fed.
Housing Fin. Agency, 789 F. Supp. 2d 85, 88-89 (D.D.C. 2011).

    The defendants argue that all of the documents currently
withheld by FHFA under the deliberative process privilege should
be ordered produced because FHFA has not included "the requisite
certification" by an FHFA official in the privilege logs upon
invoking the privilege.  Although FHFA offers to make the
certifications available when specific documents are challenged
in court, the defendants argue that the failure to offer those
certifications in the privilege logs is "fatal" because the time
to produce such certifications is at the time the privilege is
invoked and not when the question is before the court.  But the
defendants do not show either that: 1) a statement of
certification by an agency official must be made at the time
that the privilege is invoked, rather than when challenged; or
2) that the proper remedy for failure to provide certification
at that stage is compulsion of wholesale disclosure rather than
in camera review of individually challenged documents.

    The defendants principally rely on a case from the Federal
Claims Court, Pac. Gas & Elec. Co. v. United States, 70 Fed. Cl.

128 (2006), which concluded in dictum that a certification relating to the invocation of the deliberative process privilege should be filed contemporaneously with the privilege log.  Id. at 142-44.  But this case, in addition to not being controlling law in this Circuit, is an outlier.  Subsequent Court of Claims cases have approved the production of the certifications in response to a motion to compel.  See, e.g., Huntleigh USA Corp. v. United States, 71 Fed. Cl. 726, 727 (2006); see also In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997)(finding no "obligation to formally invoke . . . privileges in advance of the motion to compel.").  Accordingly, there is no reason to order blanket production of all of the documents over which FHFA asserts the deliberative process privilege.

It is also worth noting that requiring a high-level agency official to provide a certification justifying the invocation of privilege with respect to the more than 22,000 documents at issue here, before any document is specifically challenged, would constitute a tremendous resource strain on FHFA.  The defendants' contention that such a procedure is required is incongruent with the real-world practicalities of agency governance.

III. <u>The defendants' global attempt to override both privileges for good cause</u>

The defendants contend that regardless of whether either privilege applies, good cause exists to override the privileges in this case and compel disclosure.  Both the bank examination and the deliberative process privileges are qualified privileges and may be overridden for good cause based on analysis of competing interests.  <u>See, e.g.</u>, <u>Wultz</u>, 2013 WL 1453258, at *3; <u>United W. Bank v. Office of Thrift Supervision</u>, 853 F. Supp. 2d 12, 16 (D.D.C. 2012).  "[T]he privilege may be overridden where necessary to promote the paramount interest of the Government in having justice done between litigants, or to shed light on alleged government malfeasance, or in other circumstances when the public's interest in effective government would be furthered by disclosure."  <u>In re Subpoena Served Upon Comptroller of Currency</u>, 967 F.2d at 634 (citation omitted).

In determining whether good cause exists to override the privileges here, both parties rely on the six factor test originally enunciated in <u>Franklin</u>, 478 F. Supp. 577, and adopted by at least three Circuits.  <u>See</u> <u>In re Bankers Trust Co.</u>, 61 F.3d 465, 472 (6th Cir. 1995); <u>In re Subpoena</u>, 967 F.2d at 634; <u>F.T.C. v. Warner Commc'ns Inc.</u>, 742 F.2d 1156, 1161 (9th Cir.

27

1984).  Under the Franklin test, factors that weigh in the decision whether to overcome a privilege include: the relevance of the documents at issue in the litigation, the availability of alternative sources of evidence, the seriousness of the litigation, the role of the government in the litigation (the government's role as a plaintiff weighs toward disclosure), and the possibility of future timidity by government employees. Franklin, 478 F. Supp. at 583.

It is self evident that the fact-intensive Franklin test cannot be applied in generalized form in the absence of specific facts to form the substance of the balancing test.  In Franklin itself, the court stated that "[g]iven this clash of strong competing interests [in the "good cause" test], the official information privilege usually requires examination of the documents [i]n camera."  Id. at 582; see also id. at 583 (noting approvingly that "the litigant's claim of need is concrete, not abstract.").  Franklin's prediction about the need for in camera review to determine whether good cause exists in these circumstances has been borne out by courts that faced the question.  See, e.g., In re Citigroup Bond Litig., 08 CIV. 9522 (SHS), 2011 WL 8210671, at *2 (S.D.N.Y. Dec. 5, 2011) (conducting "a laborious review of each allegedly privileged document to determine whether it contains privileged

28

communications . . . [and] whether plaintiffs have shown good cause to override the privilege."). Here, the defendants seek a blanket order compelling production of over 18,000 documents over which FHFA claims a privilege. It is impossible to determine whether good cause exists to override any privilege without in camera review of at least some representative challenged documents.

IV. The procedure for challenging invocations of privilege going forward

Given that the defendants' blanket claims against FHFA's invocation of the bank examination and deliberative process privileges fail, and the "good cause" question cannot be answered globally, the parties should follow the procedure set out at a conference of February 21, 2013 to challenge any individual invocations of privilege. Pursuant to the guidance given at that conference, the parties should meet and confer in good faith to resolve any privilege disputes over individual documents. If the parties cannot agree, they should select five or ten documents that reflect the different kinds of privilege issues over which the Court can rule.[5]

---

[5] For example, the defendants point to several documents that FHFA is withholding under the deliberative process privilege consisting of communications entirely within the GSEs. The defendants argument that FHFA can only invoke the privilege with

CONCLUSION

The defendants' August 30, 2013 motion to compel production of documents withheld by FHFA on the basis of the bank examination and deliberative process privileges is denied.

Dated:     New York, New York
           October 16, 2013

                              _____
                                    DENISE COTE
                              United States District Judge

---

respect to communications in which an <u>agency</u> (not the GSEs) is a party is of the type that can be addressed through this <u>in camera</u> process.